IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| WILLIAM R. ROGERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  05-3293 |
| | ) | |
| JO ANNE BARNHART, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

Plaintiff William Rogers appeals from the decision of Defendant Commissioner of Social Security to deny his application for Supplemental Security Income and Disability Insurance Benefits. For the reasons set forth below, the decision of the Commissioner is affirmed.

## STATEMENT OF FACTS

Rogers was born on October 17, 1962. He completed high school and one and one-half to three years of college. He worked as a certified nurse's assistant (CNA). On December 7, 1997, a patient grabbed him at work and injured his neck. He subsequently was diagnosed with a disc herniation at

1

the C6-7 level of his cervical spine. Rogers has reported severe pain ever since the 1997 incident. He stopped working on July 10, 1999. <u>Record of Administrative Proceedings (d/e 10) (hereinafter "R.")</u> at 103. Dr. Boyd E. McCracken, M.D., performed a residual functional capacity assessment on November 30, 2000. Dr. McCracken opined that Rogers could occasionally lift twenty pounds, frequently lift ten pounds, stand or walk for six hours in an eight hour workday, and sit for six hours in an eight hour workday. Dr. McCracken also noted some limited restrictions on kneeling and crouching. He noted no other restrictions. <u>R.</u> 257-63.

Rogers' former employer's worker's compensation carrier paid for cervical fusion surgery in August 2001. On January 7, 2003, Dr. Sandra A. Biliasky, M.D., performed another residual functional capacity assessment. Dr. Biliasky opined that Rogers could occasionally lift twenty pounds, frequently lift ten pounds, stand or walk for six hours in an eight hour workday, and sit six hours in an eight hour workday. She concluded that Rogers could only occasionally stoop, but otherwise had no other restrictions on his physical abilities. Dr. Stanley A. Burris, M.D., reviewed the evidence and affirmed the assessment on February 3, 2003. <u>R.</u> 325-32.

Rogers also suffers from depression. On July 26, 2000, he was

admitted into a hospital emergency room after taking an overdose of Darvocet. R. 246. The hospital record characterized the overdose as an attempted suicide. Id. On December 10, 2002, Dr. Ronald Matthew, Ph.D., diagnosed Rogers as having major depression. R. 310. On December 20, 2002, Dr. Patricia A. Beers, Ph.D., performed a psychiatric review of Rogers. She opined that he had a depressive syndrome. Dr. Beers opined that Rogers' depression resulted in mild limitations on his abilities to maintain activities in daily living, social functioning, concentration, persistence, and pace. She found no other limitations. R. 311-24.

The Administrative Law Judge (ALJ) held a hearing on January 16, 2005. Rogers appeared in person and by his counsel. Rogers and a vocational expert, Bonnie Gladden, testified at the hearing. Rogers testified that he lived with his ex-wife and his son in a single family residence. R. 376. He was not working at the time, and his ex-wife was supporting him. Id. Rogers testified that his doctor put him on a restriction of lifting twenty pounds or less, and no continual stooping or bending. R. 379. Rogers could not remember the rest of the restrictions. Rogers testified that no one would hire him because of these restrictions. Id. The ALJ asked Rogers for the reason that he could not work. Rogers responded that he could not work

3

because of his back.  Rogers stated he had severe pain in his back and neck. R. 379-80.  Rogers testified that he was on medication that made him groggy.  Rogers also testified that he suffered from depression.  R. 381.  He also testified that he saw counselors at the Veterans Administration regularly.  R. 380.

Rogers testified that in a normal day he got out of bed about 5 a.m.  He made coffee.  He picked up a few things around the house.  He washed dishes, but he could not put them away because of his back.  He fixed meals.  He did a little grocery shopping.  He did not do laundry.  He spent much of his time watching television, listening to the radio, and reading novels.  He drove once a week, usually to see his mother.  He did some gardening once and suffered from severe pain as a result.  He took care of his personal hygiene and dressed himself.  R. 381-84.

Rogers' attorney asked him questions about his hands. Rogers testified that he had problems with his hands.  He testified that his hands "lock up" on him and he cannot use them.  He testified he wears braces because of the problem.  R. 387-88.

Gladden then testified.  ALJ asked:

Q.   Ms. Gladden, I would like you to consider an individual

4

who is 42-years-old with the same education as Mr. Rogers, past relevant work the same as Mr. Rogers, an individual who would be limited to light and sedentary work with following limitations.  No jobs which would require climbing or working at unprotected heights. No jobs which would require repetitive stooping or bending.  No over shoulder work, and would be limited to jobs which are routine and repetitive in nature.  How would these restrictions affect the performance of the past relevant work?

R. 389.  Gladden responded that all of Rogers' prior work was rated medium or heavy.  Id.  The ALJ then asked:

> Q. All right. If we go to the area of unskilled entry level work, can you give me some examples of jobs that would fit the hypothetical at the sedentary and light exertional levels?
>
> A. There's that of an officer helper, 239567-010, while the exertional level is listed light because of it involves sitting. Near approximately 7,000 at the light, unskilled level. And almost 3,000 at the sedentary level.  There's that of a quality control inspector, 669687-014, it's considered sedentary.  At sedentary and unskilled level, there is approximately 2,000 and at the light level, there's approximately 11,000.  There's that of a parking lot attendant, 915473-010, while it's (sic) exertional level is listed as light, it also has a seating component to it.  It's unskilled, approximately 4,000.  There's that of a gate tender, 372667-030.  These figures are from the State of Illinois, there's approximately 8,200 in the State of Illinois.

R. 389-90.

The ALJ issued her decision on May 20, 2005.  R.16-23.  The ALJ

5

followed the five-step analysis set forth in the Social Security Administration Regulations (Analysis). 20 C.F.R. §§ 404.1520, 416.920. Step 1 requires that the claimant not be currently engaged in gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If true, Step 2 requires the claimant to have a severe impairment. 20 C.F.R. §§ 404.1520(c), 416.920(c). If true, Step 3 requires a determination of whether the claimant is so severely impaired that he is disabled regardless of his age, education, and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). The listings of such severe impairments are set forth in 20 C.F.R. Part 404 Subpart P, Appendix 1 (Listing). The claimant's condition must meet the criteria in a Listing or be equal to the criteria in a Listing. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not so severely impaired, then Step 4 requires the ALJ to determine whether the claimant is able to return to his prior work considering his residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant cannot return to his prior work, then Step 5 requires a determination of whether the claimant is disabled considering his RFC, age, education, and past work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f). The claimant has the burden of presenting evidence and proving the issues on the first four steps. The Commissioner

has the burden on the last step; the Commissioner must show that, considering the listed factors, the claimant can perform some type of gainful employment that exists in the national economy. Knight v. Chater, 55 F.3d 309, 313 (7th Cir. 1995).

The ALJ concluded that Rogers met his burden at Steps 1 and 2 of the Analysis. She concluded that Rogers had not been gainfully employed and had severe impairments due to his history of disc herniation with cervical fusion surgery, limitations in the use of his hands, and depression. R. 17.

At Step 3, the ALJ concluded that none of Rogers' impairments were equivalent to any impairments in the Listings. The ALJ found Rogers' subjective claims of the extent of his pain not to be credible. R. 19. The ALJ explained that Rogers had no medical evidence concerning the problems with his hands. The ALJ stated that the back condition was severe but did not meet a Listing. The ALJ reviewed the medical evidence, including the residual functional capacity evaluations of Drs. McCracken and Biliasky.

The ALJ stated that she also considered Rogers' mental condition. The ALJ noted that Dr. Beers found no severe impairments as a result of Rogers' depression. R.19-20. The ALJ found that Rogers' depression imposed no more than mild restrictions on daily activity and social functioning. The ALJ

7

noted that Rogers cared for his own personal needs and performed household tasks. The ALJ found mild restrictions on his ability to concentrate based on the medical evidence and on Rogers' testimony that he had memory problems which were exacerbated by his medication. The ALJ noted that Rogers was able to read novels, drive, and play solitaire on the computer.

The ALJ concluded that Rogers was limited to routine and repetitive light or sedentary work. The non-exertional limitations of routine and repetitive work reflected the mild limitations due to his depression and the moderate limitations on his memory. R. 20. Based on these findings, the ALJ concluded, at Step 4, that Rogers could not perform his past relevant work.

The ALJ then determined, at Step 5, that the Commissioner met her burden to establish that Rogers could perform a significant number of jobs in the national economy. The ALJ relied on the testimony of Gladden that he could perform several thousand light or sedentary jobs. The ALJ, therefore, concluded that Rogers was not disabled.

Rogers appealed this decision to the Social Security Administration's Appeals Council. The Appeals Council denied Rogers' request for review on September 23, 2005. R. 8. The ALJ's decision then became the decision of

8

the Commissioner. Rogers now appeals that decision to this Court.

## ANALYSIS

This Court reviews the ALJ's decision to determine whether it is supported by substantial evidence. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate" to support the decision. Richardson v. Perales, 402 U.S. 389, 401 (1971). This Court must accept the ALJ's findings if they are supported by substantial evidence, and may not substitute its judgment for that of the ALJ. Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986). The ALJ further must articulate at least minimally his analysis of all relevant evidence. Herron v. Shalala, 19 F.3d 329, 333 (7th Cir. 1994). The Court must be able to "track" the analysis to determine whether the ALJ considered all the important evidence. Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995).

The ALJ's decision is supported by substantial evidence. The medical evidence supports the conclusion that Rogers had limitations due to his back problems, but could perform light or sedentary work. Both residual functional capacity evaluations concluded that Rogers could: (1) lift ten pounds regularly and twenty pounds occasionally: (2) sit, stand or walk for six hour in an eight hour workday; and (3) occasionally stoop, kneel and

crouch. This evidence supports the conclusion that the back problem was a severe problem, but did not meet any Listing.

Rogers claims that the ALJ improperly found that his testimony about his hand limitations was not credible. Plaintiff's Memorandum (d/e 12) at 2. The Court disagrees. There was no medical evidence regarding Rogers' problems with his hands. He wore braces, but he had no evidence that any doctor prescribed braces.[1] Rogers, further, testified that he could not work because of his back, not because of his hands. The ALJ's credibility finding, thus, is supported by substantial evidence. In addition, the ALJ considered the limitations on Rogers' use of his hands by limiting his RFC to light or sedentary work, and so, recognizing the limitations on his ability to lift and carry. R. 19.

The medical evidence also supported the ALJ's finding regarding Rogers' depression. Rogers argues that the ALJ made no findings regarding his mental condition and that his condition met the Listing 12.04 for affective disorders. Plaintiff's Memorandum at 2. This is incorrect; the ALJ

---

[1] Rogers cites a statement by the ALJ to try to prove that a doctor prescribed the braces. Plaintiff's Memorandum at 2. The ALJ, however, did not state that a doctor prescribed braces for Rogers. R. 387. Rogers, further, did not submit evidence of such prescription to the ALJ.

discussed Rogers' mental conditions extensively. R. 19-20. Furthermore, Listing 12.04 requires that a depressive illness must result in: (1) marked limitations on activities of daily living, social functioning, concentration, persistence, or pace; or (2) repeated episodes of decompensation, each of extended duration. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04 (B) & (C). Dr. Beers found only mild limitations on his ability to maintain activities of daily living, social functioning, concentration, persistence, or pace; and the evidence only showed one episode of decompensation in the 2000 suicide attempt. This evidence supports the ALJ's conclusion that Rogers did not meet this Listing.

The ALJ's findings regarding Rogers' RFC is also supported by substantial evidence. The ALJ found that Rogers had the RFC to perform light or sedentary work subject to: (1) exertional restrictions on climbing, working at unprotected heights, stooping or bending, and over-shoulder work; and (2) non-exertional restrictions limiting him to routine, repetitive tasks. These restrictions are supported by the medical evidence. The ALJ also took into account Rogers' testimony regarding his limitations on his ability to remember by limiting him to repetitive tasks. The evidence, therefore, supports the ALJ's conclusions through Steps 3 and 4 of the

Analysis that Rogers had a severe impairment that precluded him from returning to his prior work, but his condition did not meet any Listing.

The ALJ's finding that the Commissioner met her burden of proof at Step 5 is also supported by substantial evidence. Gladden testified that a person with Rogers' limitations could perform thousands of jobs in the national economy. The Commissioner's decision is, thus, affirmed.

THEREFORE, the Commissioner's Motion for Summary Affirmance (d/e 15) is ALLOWED. The Plaintiff's Motion for Summary Judgment (d/e 12) is DENIED. The decision of the Commissioner is AFFIRMED. All pending motions are denied as moot. This case is closed.

IT IS THEREFORE SO ORDERED.

ENTER: July 24, 2006.

    FOR THE COURT:

                          s/ Jeanne E. Scott
                          JEANNE E. SCOTT
                UNITED STATES DISTRICT JUDGE